UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DIONNE L. HEILMAN,

                    CASE NO. 1:14-CV-14747

      *Plaintiff*,

                    DISTRICT JUDGE THOMAS L. LUDINGTON
v.                   MAGISTRATE JUDGE PATRICIA T. MORRIS

THE STATE OF MICHIGAN et al.,

      *Defendants*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

## I.   Recommendation

Plaintiff proceeds *in forma pauperis*, subjecting her claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B). Plaintiff has also sought leave to amend her complaint, asking the Court to allow her to remove two paragraphs from it and change "the dates to December 04, 2012." (Doc. 5 at Pg ID 2.) I suggest that because Plaintiff filed the motion within twenty-one days of her initial complaint, the motion should be GRANTED.

With or without those amendments, however, the complaint fails to state a claim. Her complaint, as amended, concerns a patent, a landlord-tenant relationship, a probate estate, and other discrete episodes. She asserts that these events give rise to three constitutional claims, including violations of the Due Process, Equal Protection, and Takings clauses. I cannot see the connection between the facts and the claims. Consequently, I suggest that Plaintiff has failed to state a

claim and recommend dismissing her complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B).

## II.   Introduction

Plaintiff attempts to bring six causes of action against Defendants. (Doc. 1 at 13-14.) These include alleged violations of the Due Process, Equal Protection, and Takings clauses. (*Id.*) Each violation is asserted twice, once under 42 U.S.C. § 1983 and once under 28 U.S.C. § 1331. (*Id.*) She claims elsewhere that the case is a *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* action, and also involves Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7 and the Administrative Procedure Act, 5 U.S.C. § 706. The list of Defendants spans almost two pages, including the State of Michigan, two Michigan probate courts, a clerk who works in one of those courts, a probate judge, the United States Secretary of Commerce, and a host of individuals and entities supposedly working as agents and attorneys of the United States Patent and Trademark Office. (Doc. 1 at 1-2.) Included among those attorneys are Dickinson Wright, PLLC, a law firm, and John Artz, an attorney at that firm. (*Id.*)

It is not at all clear how this motley group combined to violate Plaintiff's rights. Tracing the complaint's contours demonstrates its inadequacies. The following relays the facts as Plaintiff provided, attempting to make sense of them when possible. She begins by suggesting that she included all of the alleged facts in a prior complaint filed in Genesee County Probate Court. (*Id.* at 3.) Apparently, the present action "arises out of . . . the sale of [an] original [p]atent" held by Darwin Irvin

Heilman, Plaintiff's brother. (*Id.* at 3, 12.) Plaintiff does not say when the sale occurred, but notes that something—either the sale of the patent or perhaps another event entirely—"closed on December 4, 2012." (*Id.*) In any case, Darwin never permitted the sale or received any proceeds from it. (*Id.*)

Darwin filed the patent application on December 4, 2012, and the Patent Office published his application on June 5, 2014. (*Id.* at 3, Ex. A.) *See also* 35 U.S.C. § 122 (providing for publication of applications after eighteen months); U.S. Patent App. No. 20140150835 (filed Dec. 4, 2012), *available at* http://appft.uspto.gov/netahtml/PTO/srchnum.html (last visited Feb. 20, 2015) (search for "20140150835"). Two days after publication, Darwin was dead from a gunshot wound to the chest, apparently self-inflicted.[1] (*Id.* at 3.) "On June 8, 2014, less than 24 hours after Darwin's death," the Patent Office forwarded his application to an examiner. (*Id.* at 4, Ex. B.) Shortly after, Plaintiff discovered the patent application online. (*Id.* at 4.) She then requested Darwin's autopsy report and alerted the police to the sale of the application. (*Id.*)

In August, Darwin's heir, D'andra Saferian, "claimed she was in fear of losing Darwin's patent rights due to filing fees [owed] to Darwin's original attorney, Defendant John S. Artz . . . ." (*Id.*) In the complaint's caption, Mr. Artz is listed as an attorney for the Patent Office, along with his firm, Dickinson Wright, PLLC. (*Id.* at 1-2.) *See also* Dickinson Wright, PLLC, *John Artz*, http://www.dickinson-wright.com/our-people/johna_artz. Unmentioned by Plaintiff but revealed by the Pa-

---

[1] The Oakland County website confirms that Darwin Heilman died on June 5, 2014. Oakland County Register of Deeds, *available at* https://apps.oakgov.com/crts0005/forms/buyDeath.jsp (last visited Feb. 25, 2015) (search for "Darwin Heilman").

tent Office's online database, Plaintiff obtained a patent on October 21, 2014. U.S. Patent No. 8,863,765 (filed Dec. 4, 2012; granted Oct. 21, 2014). Mr. Artz is listed as the attorney on the patent. *Id.* Dannielle Heilman, Darwin's sister, was also somehow involved.[2] She was Plaintiff's landlord "and due to conflict, landlord Dannielle . . . ordered the Plaintiff to move out." (*Id.* at 4, Ex. F.) Eviction proceedings commenced the following month. (*Id.* at 5, Ex. F.)

Plaintiff says that on September 4, 2014, she filed an application "for Supervised Probate and/or Appointment of Personal Representative" with James N. Bauer, the Register for the Genesee County Probate Court. (*Id.* at 4.) She served Ms. Saferian and Dickinson Wright, PLLC, with the papers. (*Id.* at 5.) A few days later, Ms. Saferian, "unbeknownst to the Plaintiff, . . . violated the First-to File Rule, [sic] per instructions by Attorney John [Artz], and filed an application" for informal probate and "Appointment of Personal Representative." (*Id.*) Underneath this paragraph, Plaintiff copies language from Michigan Court Rule 5.309, which states that anyone seeking to be appointed as personal representative of an estate in informal proceeds must give notice of her intent to all persons "having a prior or equal right to appointment . . . ."

On September 12, Plaintiff alleges the probate court held a hearing on these petitions and dismissed Plaintiff's claim. (*Id.* at 6, Ex. E.) Again, she appends a Court Rule to the bottom of the paragraph, indicating that the court had to notify

---

[2] At this point in the original complaint, Plaintiff added additional information. Plaintiff told Ms. Saferian and Dannielle that Darwin did not owe any money because the filing fees were required when he filed, and that Mr. Artz "owned [sic] Darwin money for the [a]pplication and/or sale, nearly 19 months ago on December 4, 2014." (*Id.* at 4.) That "[a]pplication and/or sale was assigned the number 13/696, 112, on December 4, 2014." (*Id.*)

her of any hearings. (*Id.* at 6 (citing Mich. Ct. Rule 5.102).) The exhibit she provides, however, does not state that any official hearing occurred; instead, the document is a court order, signed by the Probate Judge Jennie Barkey, stating, "It has come to the attention of the court that Mr. Heilman passed away in Oakland County, Michigan. As a result, this Court lacks jurisdiction to considerer a petition for probate administration . . . ." (*Id.*, Ex. E.) Consequently, Judge Barkey dismissed Plaintiff's petition and complaint. (*Id.*)

Plaintiff then moved to her mother's residence in September and had to arrange for internet and telephone services at their residence. (*Id.* at 6-7.) She promises that, upon request, she "shall contact Frontier, the phone and internet service provider, to request and submit verification of the length in time it took to active [sic] service." (*Id.*) Those services in place, she reviewed the online docket for the dismissed probate action and discovered that "on September 12, 2014, the day of said hearing, the Genesee County Probate Court and the Oakland County Probate Court entered or executed an [sic] contract or agreement . . . without Notice or Hearing to Plaintiff." (*Id.* at 7.) According to Plaintiff, the agreement related to a loan: "[T]he Genesse County Probate Court filed a 'copy of LOA from Oakland Co,' thus, 'copy of loan,' from the Oakland County Probate Court." (*Id.*) She provides a copy of the docket, printed on October 14, 2014, she claims. (*Id.*, Ex. G.) The docket sheet includes the "copy of LOA" language, but gives no reason to think that this represents a loan between the courts involving Darwin's case or estate.[3] (*Id.*) The

---

[3] Perhaps the abbreviation stands for a "Letter[] of Authority," which is a document the Oakland County Probate Court issues in these cases. Oakland Cnty., *Probate Court Glossa-*

docket also mentions that the Genesee court received a copy of Darwin's death certificate. (*Id.*) Sensing foul play, Plaintiff consulted the docket again a few days later. (*Id.* at 7.) This time, it contained no mention of the agreement and said the case had closed, with the last activity date occurring on September 6, 2014. (*Id.* at 7, Ed. H.)

On October 23, 2014, she filed a motion in Genesee Probate Court, naming as defendants Darwin, Dickinson Wright, PLLC, the Commissioner of Patents, and most if not all of the other individuals named in the current case. (*Id.*, Ex. I.) The subject of that action is not clear. She evidently intended to file the motion as part of the case that had closed in September, captioning the document with the same case number. (*Id.*, Ex. E, G, H, I.) Plaintiff seems to indicate that the complaint included all of her claims in the present complaint: "The Above Delayed Motion included paragraphs 5 through 28 . . . ." (*Id.* at 7.) The portion of that motion she includes as an exhibit here is her prayer for relief, which requested a rehearing, a veto of "Defendants [sic] Settlement Agreement," and "[t]he appointment of a . . . guardian ad litem to conduct an investigation and make a report in open court . . . ." (*Id.*, Ex. I.)

Two days after serving the motion, she phoned the Probate Court and spoke with Defendant Bauer. (*Id.* at 8.) He informed her that "the Motion was not filed and will not be filed, and was sent back because the Plaintiff commenced the pro-

---

*ry*, http://www.oakgov.com/courts/probate/Pages/glossary/egct-lm.aspx (last visited Feb. 20, 2015). The Court does not need to decide what this represents because, as discussed below, the allegation that some agreement took place is patently implausible and, even if not, would still fail to help Plaintiff construct a non-frivolous claim. Thus, any consideration of facts contradicting the pleading is unnecessary to the dispositive analysis and merely shows the complaint's implausibility.

ceedings after the proceedings were filed in another Court." (*Id.*) Afterwards, Plaintiff drafted and sent a letter of complaint to Judge Barkey. (*Id.* at 8, Ex. J.) In it, she explained her conversation with Defendant Bauer and added that "he was wrong, and that [she] was the Fist-to-File. [sic] and that pursuant to [Michigan Court Rule] 8.301 (B) [sic] he did not have the authority to not file my Motion because it involved a contested matter and acts forbidden by law to be performed by the probate register."[4] (*Id.*, Ex. J.)

Plaintiff received Judge Barkey's response letter in November. (*Id.* at 8, Ex. K.) After reviewing the file, Judge Barkey wrote that Plaintiff's petition had been "appropriately dismissed with prejudice due to lack of jurisdiction since the decedent passed away in Oakland County. . . . [T]here is a decedent's estate properly opened in Oakland County Probate Court." (*Id.*) Defendant Bauer properly rejected the motion because it did not conform to filing requirements. (*Id.*) Michigan Court Rule 5.133(A)(2) allows registers to reject "nonconforming documents in accordance with [Michigan Court Rule] 8.119." That rule, in turn, allows clerks to reject documents with improper captions. Mich. Ct. R. 8.119(C). Judge Barkey thus explained that "[it] appears that the caption on your motion is not correct since you identify yourself as the personal representative of the estate of 'Darwin Heilman, D'Andra Saferian, and Darek Heilman.'" (Doc. 1, Ex. K.) That was incorrect. "D'Andra Heilman is the personal representative for the estate of Darwin Heilman, and, again,

---

[4] Michigan Court Rule 8.301(B) allows the chief probate judge to authorize a probate register to do all non-judicial acts "required of the probate judge . . . ."

that estate is open in Oakland County Probate Court." (*Id.*) Judge Barkey concluded that her court was the wrong place to file Plaintiff's motion. (*Id.*)

Thus ends Plaintiff's recitation of the facts. She then lists contact information for each Defendant. (*Id.* at 9-12.) Her "Cause of Action" section does not refer to specific facts linked to her legal claims. (*Id.* at 12-15.) Instead, she asserts that the Defendants "engaged in a pattern of 'unconstitutional conduct', 'under color of law', [sic] violating Plaintiff's fundamental rights by using powers given to them by government agencies (local, state, federal) to willfully deprive and or [sic] conspire to deprive Plaintiff of rights protected by the Constitution of the United States of America." (*Id.* at 12.) Continuing, she says that these depredations "subject[ed] Plaintiff and Plaintiff's beloved brother, Darwin, to deprivation of property without compensation, unjustifiable poverty, economic sorrow, depression, frustration, fear, mental suffering, humiliation, embarrassment, loss of dignity and name, shame, and finally death." (*Id.*) The remainder simply cites a few cases, incorporates previous allegations by reference, and baldly asserts various violations of her constitutional rights. (*Id.* at 12-14.)

She seeks various remedies. (*Id.* at 15.) First, she asks that the court revoke "all orders or agreements made illegally or in violation of the Law that Due Process of Law [sic] be allowed . . . ." (*Id.*) Next, she seeks judicial review of the probate county courts, the Department of Commerce, and the Patent and Trademark Office under the Administrative Procedure Act, 5 U.S.C. § 706. (*Id.*) Additionally, she requests that the United States Attorney General investigate, then sue, "to enforce

Title VI of the Civil Rights Act of 1964 (Deprivation of Rights Under Color of Law by denying access to public facilities), and in connection with programs and activities receiving Federal financial assistance; and authorize and direct the appropriate Federal departments, and agencies to take action." (*Id.*) The Court should also appoint a "'Master' for the substitute of an [sic] Guardian Ad Litem, to monitor and oversee proceeds, conduct an investigation, and make a report in open court, or, in the alternative, file a written report of the investigation and recommendations prior to the date of hearing." (*Id.*) To finance the "Master," Plaintiff suggests that the Court sanction Defendants. (*Id.*) Finally, she seeks "TRUTH AND JUSTICE." (*Id.*)

## III.   Analysis

### A.   Governing Standard for IFP Screening

In enacting the original *in forma pauperis* ("IFP") statute, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). Later, Congress crafted a screening procedure that requires the court to review the complaints of all plaintiffs proceeding *sua sponte* and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

When considering whether a complaint states a claim, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

### B.   Analysis of Motion to Amend (Doc. 5)

Plaintiff has had second thoughts about two of the paragraphs in her original complaint. (Doc. 5 at Pg ID 113.) She asks the Court to allow her to "withdraw[] and/or [strike them] from the Complaint as if never asserted in the first instance . . . ." (*Id.*) At the same time, she requests "that the dates be amended to December 04, 2012." (*Id.*) Removing the paragraphs would preclude her from changing the dates

in them, so her request is unclear. In any case, the complaint fails to state a claim with or without them.

As an initial matter, the status of her request is also ambiguous. She entitles it the "Amended Verified Complaint," and filed it on the cut-off date for amending as a matter of course. Fed. R. Civ. P. 15(a)(1)(A). But the full text of the new pleading is not included, as required by Federal Rule of Civil Procedure 15 and Local Rule 15.1. Moreover, the body of the document she filed simply "moves this Court for an order granting the amendment of Plaintiff's original Complaint . . . ." (Doc. 5 at Pg ID 113.) She originally filed it on the electronic docket as a "Motion to Amend/Correct." Thus, it is not entirely apparent whether she intended to file a motion, or the new complaint itself.

Out of an abundance of caution, I reviewed the original complaint and found it did not state a claim. Plaintiff's proposed changes do nothing to change this conclusion. She wants to remove two paragraphs. The first contains what seemed to be the heart of the complaint: "On December 05, 2012, Darwin's original Patent Application 13/693,112 (hereafter original Application or Property); Adjustable Tree Stand Hunting Blind, was sold." (Doc. 1 at 3.) Without this allegation, the pleading falls even further away from stating a claim. Nevertheless, the same information resides in the preceding paragraph, so the change does not have any substantive effect. The second paragraph she discards includes her comments to Dannielle regarding Darwin's filing fees and Defendant Artz's obligation to pay Darwin. (*Id.* at 4.) Removing this allegation nearly deflates the complaint entirely.

11

I suggest that Plaintiff has a right to amend because she filed within twenty-one days of her initial pleading. Fed. R. Civ. P. 15(a)(1)(A). *See also Toenniges v. Georgia Dep't of Corrections*, 502 F. App'x 88, 889-90 (11th Cir. 2012) ("[W]hen the plaintiff has the right to file an amended complaint as a matter of course, the district court lacks the discretion to reject the amended complaint based on its alleged futility."); *Peckham v. Scanlon*, 241 F.2d 761, 764-65 (7th Cir. 1957) (noting that the right to amend as a matter of course is "absolute" in nature and cannot be denied even where the amendments are futile); *Rogers v. Girard Trust Co.*, 159 F.2d 239, 241 (6th Cir. 1947) (holding that it was error to deny leave to amend where the appellant was entitled to amend as matter of course and permission was unnecessary). Accordingly, I consider below Plaintiff's amended complaint, consisting of her initial complaint without the two excised paragraphs.

### B.   Analysis of Amended Complaint

#### 1.   *Jurisdiction and Immunities*

Plaintiff's complaint fails to state a claim. First, she misconceives 28 U.S.C. § 1331, attempting to bring her three core claims under that statute as well as under 42 U.S.C. § 1983. (Doc. 1 at 14.) However, 28 U.S.C. § 1331 simply grants the district courts jurisdiction to hear cases without creating a vehicle for those actions. This does not affect the substance of her case since Plaintiff's claims properly fall under 42 U.S.C. § 1983, which she cites. (Doc. 1 at 13-14.)

Plaintiff's claims fail to the extent she seeks to overturn the probate court's dismissal of her case. It is not clear she is requesting this relief, though she asks

this Court to review the probate court under the Administrative Procedure Act. The *Rooker-Feldman* doctrine would prevent such review. Under that doctrine, lower federal courts cannot overturn state court orders or review state courts decisions if the federal issues are "'inextricably intertwined'" with the state court judgment. *McCormick v. Braveman*, 451 F.3d 382, 390 (6th Cir. 2006) (quoting *District of Columbia Court of Appeals. v. Feldman*, 460 U.S. 462, 486-87 (1983)). The analysis asks if the plaintiff is "'complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Id.* at 391 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)) (emphasis omitted); see also *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) ("The determination of whether a federal claim is "inextricably intertwined" hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy."). I suggest that the Court could not review the probate court's dismissal even if that action created a federal issue.

Next, Plaintiff fails to state a claim against the State of Michigan, Judge Barkey, or Defendant Bauer. The State of Michigan is not a "'person' within the meaning of § 1983," and so cannot be sued under that statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-67 (1989); *see also Powers v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) ("[S]ection 1983 does not authorize suits against states (states not being 'persons' within the statute's meaning) . . . ."). Defendants Barkey

and Bauer cannot be sued in their personal capacities because each can claim judicial immunity. *See generally Alkire v. Irving*, 330 F.3d 802, 810-11 (6th Cir. 2003).

Plaintiff seems to dispute Judge Barkey's failure to notify her of a hearing, the eventual dismissal of her case, and Defendant Baeur's refusal to accept additional motions in that case. (Doc. 1 at 6.) The dismissal order on the date of the alleged hearing does not indicate that any formal, or even informal, hearing took place. (*Id.*, Ex. E.) Rather, the court dismissed the case on that date after learning that the decedent died in another county, depriving the court of jurisdiction over his estate. (*Id.*, Ex. E); *see* Mich. Comp. Laws § 700.1302 (a) (granting probate courts jurisdiction over "[a] matter that relates to the settlement of a deceased individual's estate, whether testate or intestate, who was at the time of death domiciled in the county . . . ."). The court did not need to hold a hearing to determine its jurisdiction—it could take judicial notice of the official death certificate. *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216, 2003 WL 193502, at *8 (S.D. N.Y. Jan. 29, 2003) (collecting cases holding that court could take judicial notice of death certificates); *In re Carpenter*, No. 257669, 2005 WL 1923117, at *1 (Mich. Ct. App. Aug. 11, 2005) (noting that the court had taken judicial notice of a death certificate). Here, the probate docket indicates that the Genesee court obtained a copy of Darwin's death certificate, likely from the Oakland County court. (Doc. 1, Ex. G.) Therefore, Plaintiff's complaints about the hearing are probably inaccurate but certainly irrelevant.

In any case, Judge Barkey acted in her judicial capacity when dismissing the case, thus she enjoys judicial immunity from suit. See *Mireles v. Waco*, 502 U.S. 9, 9-12 (1991); *see also Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (stating that "[t]he Supreme Court has specifically held that state judges are absolutely immune from liability under 42 U.S.C. § 1983"). The absolute immunity of a judge applies "'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Judicial immunity is overcome in only two situations. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11 (citations omitted). Neither applies, and I suggest that Defendant Barkey is protected from suit by absolute judicial immunity and should be dismissed from the case.

Defendant Bauer can claim quasi-judicial immunity. This protection "'extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" *Yarbrough v. Garrett*, 579 F. Supp. 2d 856, 860 (E.D. Mich. 2008) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). Defendant Bauer would not enter Plaintiff's motion in the closed Genesee County probate case. As Judge Barkey later explained, the decision turned on Defendant Bauer's power under the Michigan

Court Rules. I conclude his determination regarding Plaintiff's ability to file her motion was sufficiently judicial in character to merit immunity.

>    2.    *Claims*

A list of immunities could likely be drawn up for other Defendants. Issues also exist when suing the federal officers. It is unclear what the Patent Office has done to draw Plaintiff's ire: It published Darwin's application and issued him a patent. The deeper problem, however, is that the asserted facts do not establish Plaintiff's legal claims. Section 1983 contains two core elements the plaintiff must establish: (1) Deprivation of a right "secured by the Constitution or laws of the United States," and (2) that the person causing the deprivation acted "under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). Plaintiff tries to meet the first element with three claims: violations of the due process, equal protection, and takings clauses.

As an initial matter, many Defendants do not appear to be state actors. Section 1983 does not protect against actions by private individuals and instead requires "state action." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Though acting "under color of state law" is not coterminous with Due Process "state action," they generally meld together and the "under color" requirement is satisfied by showing "state action." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 n.18 (1982). Here, despite Plaintiff's attempt to make Defendants appear as government officers, it seems more likely that most are private individuals not liable under Section 1983. A large swath of a private law firm, Dickinson Wright, PLLC, for exam-

ple, are Defendants, as is the firm itself. (Doc. 1 at 1-2.) Without additional information, determining whether they meet any of this Circuit's state actor tests is impossible. *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Nonetheless, it seems unlikely they do, and Plaintiff's failure to plead facts suggesting otherwise should result in dismissal of her claims.

To prevail on the due process cause of action, Plaintiff must show the state deprived her of a property or liberty interest without due process. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756-57 (2005); *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). Specifically, plaintiffs must show three elements to: (1) "That they have a life, liberty, or property interest protected by the Due Process Clause"; (2) "that they were deprived of this protected interested within the meaning of the Due Process Clause"; and (3) "that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Plaintiff's complaint does not allege any discrete property or liberty interest, show how a state actor deprived Plaintiff of that interest, or discuss the defective procedures used in the deprivation. Instead, the complaint appears to center around Darwin's patent. But there is no allegation Plaintiff had an interest in that patent or any of Darwin's other property. She mentions being evicted and having to set up internet services at her new residence; how this relates to the claim is unknown, and it would not establish a federal cause of action without more. Her efforts to become personal representative of his estate are not connected to any sufficient inter-

17

est. She failed to be appointed because she filed in the wrong jurisdiction. The facts do not suggest any due process claim.

Similarly, her equal protection argument also fails. The Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923) (quotation omitted). The Equal Protection clause of the Fourteenth Amendment essentially requires that all persons similarly situated be treated alike and should not be subjected to intentional discrimination by state actors on account of race. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992). The elements of a prima facie case of discrimination are the following: (1) Plaintiff is a member of a protected class, (2) he was subject to an adverse action, and (3) he was treated less favorably than a similarly situated person outside of the protected class. *See Mallory v. Noble Corr. Inst.*, 45 Fed. App'x 463, 471 (6th Cir. 2002); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

Here, Plaintiff does not allege any of these elements. She does not claim a protected class status. Nothing in her complaint suggests that any Defendant purposefully treated her differently than others because of race or some other protect-

18

ed-class status. *Vill. of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 229, 265-66 (1977). No facially neutral statutes appear in the complaint that could have possibly been applied unequally. *See Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996). Any alleged adverse action does not relate to discrimination. Thus, I recommend dismissing this claim.

Finally, Plaintiff fails to assert a Takings Clause claim. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without justification." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). The court must examine whether the plaintiff "has established a cognizable 'property interest,'" and whether the state deprive the plaintiff of that interest without compensation. *Wilkins v. Daniels*, 913 F. Supp. 2d 517, 541 (S.D. Ohio 2012) (quoting *Coal. for Gov't Procurement v. Federal Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004)). Here, Plaintiff meets neither element. She has not pleaded a cognizable property interest. The only relevant property mentioned is Darwin's patent, and perhaps other assets in his estate. But nothing suggests she is entitled to any such property. Therefore, I recommend dismissing this claim.

## IV.   Conclusion

I suggest that Plaintiff's amended complaint (Docs. 1, 5) has failed to state a claim and should be *sua sponte* dismissed under 28 U.S.C. §

## V.   Review

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the

Court determines that any objections are without merit, it may rule without await-

ing the response.

Date:  February 26, 2015                    /S PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge