UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DIONNE L. HEILMAN,

        Plaintiff,                      Case No. 14-cv-14747

v.                                       Honorable Thomas L. Ludington

THE STATE OF MICHIGAN, et al.,

        Defendants.

_____/

**ORDER DENYING MOTION FOR DE NOVO REVIEW, OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO AMEND AS MOOT, DISMISSING COMPLAINT WITH PREJUDICE, AND DENYING MISCELLANEOUS MOTIONS**

Plaintiff Dionne Heilman objects to Magistrate Judge Patricia Morris's conclusion that her complaint does not state a claim for which relief may be granted and should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Heilman filed her complaint on December 16, 2014. *See* Pl.'s Compl., ECF No. 1. Heilman names as defendants the State of Michigan; Judge Jennie Barkey, a Genesee County Probate Judge; James N. Bauer, the Genesee County Probate Register; the Genesee County Probate Court; the Oakland County Probate Court; the Secretary of Commerce; the Director of the United States Patent and Trademark Office ("PTO"); the Commissioner of Patents; the Chief Information Officer of the PTO; and twenty-six other individuals and entities that she claims were operating as counsel to or agents of the PTO. *Id*. She amended her complaint on January 6, 2015 to change the dates in two of the complaint's paragraphs. *See* Pl.'s Mot. Amend, ECF No. 5.

All pretrial matters were referred to Judge Morris for Report and Recommendation. *See* Order Referring Pretrial Matters, ECF No. 6. Judge Morris issued a Report on February 26, 2015

recommending that Heilman's complaint be dismissed under the 28 U.S.C. § 1915(e)(2)(B) *in forma pauperis* screening procedure because it failed to state a claim for which relief may be granted.

**I.**

Heilman's complaint contains few facts from which a cohesive picture of her grievances may be constructed. It appears that she believes that she has been wrongfully deprived of the ability to act as executor of her brother Darwin Heilman's estate and, potentially, has been wrongfully deprived of the possession of a patent he held. The facts recited below reflect the allegations made by Heilman in her complaint. To the extent inconsistencies are present, they are likewise present in the complaint.

**A.**

Heilman's brother, Darwin, held a patent application for an adjustable tree stand hunting blind. The original patent application was sold on December 5, 2012. Eighteen months later, on June 5, 2014, Darwin's patent application was published by the PTO. Two days later, Darwin was found dead in his bedroom from apparent suicide.

The next day, on June 8, 2014, Darwin's patent was forwarded to a PTO patent examiner. The effect of the patent being forwarded is not alleged by Heilman. She does claim that about one month later, on July 16, 2014, she ran an online search and discovered Darwin's patent application. Seemingly, she discovered that the patent had been sold, or she believed it to have been sold, because on August 4, 2014 she "called the Medical Examiner's Office to request Darwin's autopsy report; and reported the sale of Darwin's original Application to the police." Pl.'s Compl. ¶ 9, ECF No. 1.

Heilman then informed her family that she found the patent application published online and that it might have been sold. She was then told by Darwin's daughter and heir, D'andra Saferian, that Saferian "was in fear of losing Darwin's patent rights due to filing fees owned [read: owed] to Darwin's original Attorney[.]" Id. at ¶ 10 (sic to capitalization). Saferian and her brother apparently feared losing their rights to Darwin's application.[1] Heilman pushed back on this claim by telling her sister and landlord Dannielle Heilman and Saferian that:

a. Darwin owed no money because the filing fees were required by law at the time of filing the Application and /or sale on December 04, 2012.

b. Defendant Attorney John [Artz] owned [read: owed] Darwin money for the Application and /or sale, nearly 19 months ago on December 04, 2012.

c. The Application and /or sale and was assigned the number 13/693, 112, on December 04, 2012.

Pl.'s Compl. ¶ 11, ECF No. 1; Pl.'s Mot. Amend, ECF No. 5 (sic throughout) (the dates in the Complaint have been altered to reflect the amendment made by Heilman in her motion to amend).

**B.**

At this point, Heilman commenced legal proceedings. On September 5, 2014, she filed an action in the Genesee County Probate Court seeking to be appointed the personal representative of Darwin's estate. She named as defendants in that case Darwin Heilman, Dickinson Wright, PLLC, the Commissioner of the PTO, and numerous attorneys and individuals presumably associated with the PTO. *See* Pl.'s Compl., Ex. C, ECF No. 1. On September 8, 2014, D'andra Saferian, acting on advice of counsel, filed an application in Oakland County Probate Court to be

---

[1] By these facts it can be inferred that the transaction or sale that Heilman feared was likely a record of the transfer of the patent or application from Darwin to his children. Although, the PTO's transaction history does not reflect that the patent application was sold or otherwise transferred. Pl.'s Compl., Ex. B, ECF No. 1. In any event, the transaction record led Heilman to assume that the patent application was sold and she launched her investigation. Paragraph 10 of her complaint further reveals, however, that Saferian's children still had possession of the patent or application.

appointed the personal representative of Darwin's estate. *Id*. at Ex. D. Saferian was appointed personal representative of Darwin's estate that same day. *Id*.[2]

A hearing was held on September 12, 2014 in Heilman's Genesee County Probate Court case. She claims that this hearing took place without notice to her. The Genesee County Probate Court ordered that Heilman's petition to be appointed personal representative of Darwin's estate be dismissed. *Id*. at Ex. E. The probate court explained that it lacked jurisdiction over Darwin's estate because he passed away in Oakland County. *Id*.[3]

Heilman believes that the Genesee County Probate court "entered or executed a contract or agreement . . . without Notice or Hearing to Plaintiff." *Id*. at ¶ 24 (sic to capitalization). Heilman claims that this contract or agreement arose when "the Genesee County Probate Court filed a 'copy of LOA from Oakland Co', thus, 'copy of loan', from the Oakland County Probate Court." *Id*. at ¶ 25. How Heilman reaches the conclusion that a "copy of LOA" is a loan between two probate courts is not explained. In any event, the allegation is not credible. The "LOA" is, almost certainly, "letters of authority" related to D'andra Saferian's appointment as fiduciary of Darwin's estate. See "Letters of Authority," Probate Court Glossary, OAKLAND COUNTY PROBATE COURT, https://www.oakgov.com/courts/probate/Pages/glossary/egct-lm.aspx.

Attempting to right the wrongs she perceived done to her by the Genesee County Probate Court, Heilman filed a "Delayed Motion" with the court on October 22, 2014. *See* Pl.'s Compl. ¶ 28-29. When Heilman called the court on October 30, 2014, she was informed that her motion

---

[2] On September 11, 2014, Heilman's sister Dannielle evicted Heilman. *Id*. at ¶ 18 & Ex. F. Heilman seemingly alleges that the eviction was the result of her attempt to be appointed Darwin's heir. *Id*. at ¶ 12. The claim of eviction begins a series of interspersed paragraphs that relate to Heilman's living situation. They do not appear to be at all relevant to her claims and can, at best, be identified as informational.

[3] Heilman attaches the order dismissing her petition to her complaint. It does not appear, based on the order, that an ex parte hearing was held, as she alleges. Rather, the probate court employed the common prefatory section for court orders that reads "At a session of Court held in . . ." and then is followed by the place of court and the day the order is issued. *See* Pl.'s Compl., Ex. E, ECF No. 1. This is not reflective of an actual hearing being held, just that the court was acting in its judicial capacity on the day noted and at the situs listed.

was not filed and that the Probate Register, Defendant James Bauer, would not file the motion. In response to this rejection, Heilman mailed a letter of complaint directly to the probate judge presiding over her case, Defendant Judge Jennie Barkey. *Id*. at Ex. J.

Judge Barkey responded to Heilman on November 4, 2014 and informed Heilman that her motion was appropriately rejected. *Id*. at Ex. K. The "Delayed Motion" filed by Heilman was rejected as a nonconforming document under Michigan Court Rule 5.113(A)(2) because Heilman identified herself as the personal representative of Darwin's estate. She is not. Judge Barkey then directed Heilman to the Oakland County Probate Court where issues related to Darwin's estate could be properly litigated, since that is where the estate is open.

That ends Heilman's recitation of the facts. She proceeded to file the current action on December 16, 2014.

## II.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). If the Court accepts a

report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record.

### III.

Heilman timely filed objections to Judge Morris' Report on May 6, 2015. *See* Pl.'s Objs., ECF No. 9. She does not, however, actually make any substantive objections. The core of her objections is a dispute over the use of the *in forma pauperis* screening procedure that led Judge Morris to recommend dismissal of her complaint. At no point in her objections does she contest a factual or legal conclusion reached in the Report. In any event, liberally construing her objection, it appears Heilman makes four claims. First, the *in forma pauperis* screening procedure should not be applied to her and her complaint should be served on Defendants. Second, Judge Morris incorrectly concluded that a number of judicial and prosecutorial defendants were entitled to immunity. Third, she has a right under the Federal Rules of Civil Procedure to amend her complaint. Fourth, not so much an objection, she issues a warning to the Court.

### A.

Heilman first objects to being subjected to the *in forma pauperis* screening procedure. But despite the law she cites to in her objections, her argument is meritless. Congress has recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). Thus, the *in forma pauperis* statute includes a screening procedure that requires courts to review complaints where a plaintiff is proceeding as a pauper. 28 U.S.C. § 1915(e)(2)(B). The statute requires the *sua sponte* dismissal of a complaint if "the action . . . is frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks

monetary relief against a defendant who is immune from such relief." *Id*. This screening procedure, as noted, is not optional and Heilman has no right to the service of her complaint unless the complaint can survive screening. The standard for surviving screening includes testing the complaint against the strictures of Federal Rule of Civil Procedure 12(b)(6). *Cf. Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (concluding that "once an in forma pauperis plaintiff raises a cognizable claim, a district court may not dismiss it *sua sponte* under section 1915(d)").

Heilman does not state a claim and does not, in her objections, allege that the Report errs in analyzing the assertions in her complaint. Assuming, however, that she objects wholesale to Judge Morris' conclusions, a de novo review of her complaint reveals that she does not state a claim upon which relief may be granted.

### 1.

First, any claims related to Heilman's allegations of harm stemming from the decision of the Genesee County Probate Court or the Oakland County Probate Court must be dismissed. The *Rooker-Feldman* doctrine "prevent[s] a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment [in the lower federal courts] based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003) (quoting *Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 936-37 (6th Cir. 2002)) (second alteration in original). The doctrine also "bars relitigation of claims raised in state-court proceedings as well as claims that are 'inextricably intertwined' with the claims asserted there." *Id*. Any claim of Heilman's related to the actions of the Michigan probate courts is meritless and warrants dismissal.

### 2.

Second, Heilman's claims against the State of Michigan are not cognizable in federal court. A state may not be sued under 42 U.S.C. § 1983 unless the state has expressly waived its immunity to suit. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-67 (1989). Michigan has not waived this immunity and so an action for money damages against it may not be sustained.[4] Similarly, state courts are arms of the state and enjoy similar immunity because they are arms of the state judiciary, not the municipality in which they sit. *See Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988). Thus, Heilman cannot state a claim against the State of Michigan or either of the probate courts she sues.

Similarly, judges performing his or her judicial function are immune from suit for monetary damages. *See generally Collyer v. Darling*, 98 F.3d 211, 221 (6th Cir. 1996). Heilman makes no claims that the probate judge she sues was acting outside of her judicial function. Indeed, it is the performance of Judge Barkey's judicial function that Heilman claims has aggrieved her. Accordingly, the claims by Heilman against the individual probate judges must be dismissed.

The same goes for the Probate Register James Bauer that Heilman also names as a defendant. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). In a letter to Heilman attached to the complaint, Judge Barkey explains that Mr. Bauer rejected Heilman's filing because it did not conform with Michigan Court Rule 5.113(A)(2) since it erroneously identified Heilman as "the personal representative of the estate of 'Darwin Heilman, D'Andra Saferian, and Darek Heilman.'" Pl.'s Compl. 63, ECF No. 1. Mr. Bauer was performing a task integral or

---

[4] Heilman does not indicate what relief she seeks but it does not appear, from the face of her complaint, that she seeks injunctive relief against the State of Michigan.

intertwined with the judicial process and enjoyed the protection of quasi-judicial immunity while doing so.

**3.**

Third, Heilman's claims under 42 U.S.C. § 1983 against the remaining Defendants do not have merit. She makes three constitutional claims: violation of due process, violation of equal protection, and violation of the takings clause. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (U.S. 1988). Assuming without deciding that Heilman can demonstrate that even the non-state Defendants were acting under the color of state law, she does not plead the deprivation of any right secured by the Constitution.

**i.**

Heilman alleges that Defendants violated her due process rights. The first step for a court analyzing a due process claim is "determin[ing] whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment." *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). Based on Heilman's complaint, she can only be claiming the deprivation of a property interest. Any property interest Heilman is claiming to have must relate to a patent held by her deceased brother for an adjustable tree stand hunting blind. *See* Pl.'s Compl. ¶ 3, ECF No. 1. But Heilman does not claim that she ever had a property right in this patent. She actually admits, in her complaint, that D'andra Saferian, not Plaintiff Heilman, was the heir to her brother

Darwin Heilman's estate. *Id*. at ¶ 10. Heilman does not state a due process claim because she does not plead a constitutionally protected right to liberty or property.[5]

### ii.

Heilman also claims that her equal protection rights were somehow violated by Defendants. "The general principle is that similarly situated persons should be treated alike." *Ondo v. City of Cleveland*, 795 F.3d 597, 607 (6th Cir. 2015). Heilman must demonstrate that a state action implicates her fundamental rights or discriminates against on the basis of a suspect classification. *Id*. at 608. Absent such an allegation Heilman's claims would be subject to rational basis review. *Id*. Under rational basis review, "the burden is on the challenger to show that the government's action is not rationally related to any legitimate public interest." *Id*.

Heilman does not come close to pleading any facts that could be reasonably formed into the semblance of an equal protection claim. She does not allege a fundamental right or invidious discrimination. And even though her claim would be subject to rational basis review, she does not allege any state action that could be tested under that standard. While a pro se plaintiff is entitled to having her complaint liberally construed, it needs to provide at least enough facts to permit construal in the first instance, liberal or otherwise. Heilman's complaint does not and her equal protection claim must be dismissed.

### iii.

Third, Heilman claims that her constitutional rights under the Takings Clause of the constitution were violated. "The Fifth Amendment . . . proscribes taking [property] without just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). The taking, of course, must be effected by the state. The mere

---

[5] Perhaps she complains of her eviction, but she does not allege how her eviction was unconstitutional or how she had a constitutionally protected property interest that was deprived by the eviction. Indeed, she only notes the eviction in passing in her Complaint. *See* Pl.'s Compl. ¶ 20, ECF No. 1.

allegation of deprivation is insufficient to state a takings claim. *Id*. at 195 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981) for the analogous proposition that due process is not violated by merely alleging the deprivation of property). Thus, to complete a takings claim a plaintiff must allege insufficient and inadequate compensation for the property taken. *Id*. But Heilman need not be concerned with pleading inadequacy of compensation because she has not pled property of which she was deprived by the state. As noted above, she admits that she never possessed her brother's patent. She pleads no other facially cognizable property interest.[6] Her taking claim will be dismissed.

### iv.

Heilman repleads her three constitutional causes of action through 28 U.S.C. § 1331. That statute is not a provision through which constitutional causes of action may be privately enforced. It is merely a grant of jurisdiction to the federal courts. Those claims will be dismissed.

### B.

The next part of Heilman's objections that convey any sort of substance relate to the topic of immunity. Heilman does not engage in any analysis of the Report but simply recites some law concerning the immunity of judges and prosecutors. This subject has already been addressed. See supra § III.2. Heilman does not plead facts to overcome the absolute judicial immunity enjoyed by the judicial and quasi-judicial defendants she names.

### C.

The third substantive set of objections made by Heilman concerns amendment as of right. She is correct that Federal Rule of Civil Procedure 15(a)(1)(A) permits Heilman to amend her complaint as a matter of course within 21 days of service. Yet Heilman cannot avail herself of

---

[6] As discussed above, *see supra* n.2, Heilman may be attempting to claim a deprivation wrought by her eviction. But her Complaint is far too lacking in facts related to her eviction to be reasonably construed to plead such a claim.

this rule where 28 U.S.C. § 1915(e)(2)(B) requires that her complaint be dismissed. If her complaint states a claim sufficient to survive *in forma pauperis* screening, she would have until 21 days after service to amend as of right. She is also free to amend prior to dismissal under 28 U.S.C. § 1915(e)(2)(B). She has taken advantage of this right and moved to amend her complaint on January 6, 2015. *See* Pl.'s Mot. Amend, ECF No. 5. Rule 15(a) does not give Heilman a right to amend after her complaint is dismissed under 28 U.S.C. § 1915(e)(2)(B).

As to Heilman's amendment, it does nothing to improve her complaint. She requests leave only to alter the dates in two paragraphs of her complaint. No reason for changing the dates is given, but they have been considered as amended in the analysis of her complaint. Her motion to amend will be denied as moot, since she could amend as of right. But the complaint, as amended, does not state a claim for purposes of *in forma pauperis* screening. The analysis of her complaint does not change in light of the amendments to paragraphs 4 and 11a, b, & c.

**D.**

Lastly, Heilman issues what amounts to an ex parte warning to the Court. She appears to fear that the Court is engaged in ex parte communication with Defendants. She can be assured that it is not. The defendants she names have not been served and, as such, have not been subject to the jurisdiction of the Court or haled before it in order to defend against her claims. Due to the nature of the *in forma pauperis* screening procedure, Heilman is the only active litigant in this matter.

Perhaps, in the alternative, she believes that the *in forma pauperis* screening procedure results in ex parte communications between herself and the Court and she fears they are improper. If so, this is a novel argument. Heilman should be reassured that ethical issues related

to ex parte communications are not implicated by 28 U.S.C. § 1915(e)(2)(B). Otherwise, her concern is appreciated.

### IV.

A final consideration: Heilman has filed a series of motions attempting to compel the Court to rule on her objections to Judge Morris's Report and compel service on Defendants. Since her complaint does not state a claim sufficient to survive the *in forma pauperis* screening process, service is not proper. Those motions will be denied as moot.

### V.

Accordingly, it is **ORDERED** that Plaintiff Dionne Heilman's Motion for De Novo Review, ECF No. 9, to the Report and Recommendation is **DENIED** and her objections are **OVERRULED**.

It is further **ORDERED** that the Report and Recommendation, ECF No. 8, is **ADOPTED**.

It is further **ORDERED** that Plaintiff Heilman's Motion to Amend, ECF No. 5, is **DENIED as moot**.

It is further **ORDERED** that Plaintiff Heilman's Complaint, ECF Nos. 1 & 5, is **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff Heilman's motions seeking an order from the Court and to compel service, ECF Nos. 10, 11, 12, 13, & 14, are **DENIED**.

Dated: November 16, 2015          s/Thomas L. Ludington  
                                                    THOMAS L. LUDINGTON  
                                                    United States District Judge

- 14 -

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 16, 2015.

                                            s/Michael A. Sian
                                            MICHAEL A. SIAN, Case Manager